Please all rise. The Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable Susan F. Hutchinson presiding. Please be seated, everyone. Your Honor, the second case on the docket this morning is 2-25-0165. People of the State of Illinois, Plainton Appellate, Dean James, Robert Johnson, Benjamin Appellini, arguing on behalf of the Appellates, Mr. Michael J. Keller, arguing on behalf of Mr. Appellini, Mr. Lucas Clark. Good morning, Counsel. Mr. Kelleher, when you're ready, you may begin. Good morning, Your Honors. May it please the Court. My name is Myles Kelleher on behalf of the people. The people are appealing because the trial court's ruling granting defendants' motion to suppress was against the manifest weight of the evidence. The search of the car was lawful for two separate reasons. One, defendant admitted that there was cannabis in the trunk that was outside of a bag. And two, the police had probable cause to believe that defendant was driving under the influence of drugs. Let me ask you a question regarding the video evidence. How do we review the video evidence? Do we review it de novo, or are we bound to look at the trial court's finding and then compare the video to the trial court's findings of fact? I believe the case holds that it's a de novo review for the video. What case says that? I don't know a case offhand. There's a split in the districts. There's some cases from the first district that says because it's a video, it's like documentary evidence review de novo. In this district, we've taken kind of a different path. We look at the evidence and apply the manifest weight of the evidence standard in viewing the video, and we can make our own determinations as to what the video shows. Would you agree? Yes, Your Honor. And I do take issue with how the trial court interpreted the video. He said that the officer's, I'm sorry, the defendant was, the field sobriety tests were unobservable with minimal infractions and uncorroborated, but there's no requirement that the officer's testimony had to be corroborated by the video. The court kind of shifted the burden of proof, right? Yes. If you look at the video, you can see during the walk and turn test, the body cam video isn't showing the defendant's feet at all times. It does show his feet initially when he's initially walking, but when he turns around, it's not showing him walking back. What it does show is his upper body abruptly jerks, which is consistent with him stepping off the line as the officer testified. It also shows when he does show his feet when he's making the turn, that he takes several steps to make the turn as opposed to just walking. Yes, exactly. That's correct, Your Honor. And also with respect to the one-leg stand test, the video doesn't always show the defendant's feet, but it clearly shows the defendant's upper body, and it shows his, he was instructed to keep his arms to his side. It shows his arms clearly outstretched, swaying back and forth, and he clearly exhibits poor balance during that test. The police are responding to a call of a driver who's passed out in the car, right? Yes, that's correct. They get there, and the gas station speakers are blaring loudly. Yes, you can hear that in the video. And it's not seven or eight minutes. It's nine minutes before they knock on the window. That's correct. And you hear an officer say, I asked them to turn it down, and the volume goes down. That's correct. So they can hear and interact with the defendants picked up on their body cam footage. Otherwise, their words would have been basically erased by the noise, right? Yes. It's very loud music, as you can hear from the video, in the middle of the night. And how about when the defendant pulls up his shirt and shows his bare belly and back and shows his backside, and then he pulls his pants down. And the police are like, no, you don't have to do that. Is that an indication that the defendant might have been under the influence of some drug or alcohol? Yes. The defendant's behavior had numerous clues of impairment, and that's one of them. And these are officers who are well-trained. Officer Klingberg was a patrol officer for nine years. His training included the detection of DUI as well as alcohol and drugs. He received special A-Ride certification, which is specialized training for detecting drivers impaired by drug use. And he received training in the administration of field sobriety tests. And in deciding whether probable cause exists, an officer can make inferences based on not only their own life experiences and their experiences as police officers, but also their specialized training. And that's exactly what the police did in this case. There were numerous signs of impairment beginning, first of all, with the defendant slumped over in a car in front of a gas pump with the engine running in the middle of the night. The lights are on. The police receive a call of a person slumped over. And when they finally get to the scene, that's exactly what they see. He's still slumped over in the car, totally passed out. They shine the lights in. He doesn't respond at all. And this is 3 in the morning. So the trial court now found that, made a finding that the only observable evidence of possible impairment was defendant asleep behind the wheel of a safely parked vehicle. Well, with all due respect to the trial court, no reasonable person could conclude that this was a safely parked vehicle. A car with its engine running with a driver slumped behind the wheel, that would concern any reasonable person. And that's exactly what happened. That's why the police were called to the scene. Because, first of all, it's not in a designated parking spot. In front of a gas pump, that's not a parking spot. That's a place where drivers can temporarily use to fill up their gas, maybe briefly run into the store. So he's not in a safely parked vehicle at all. And there's, he's in close proximity to gas pumps. He's in close proximity to the store. There's other, this is an all-night gas station. It's, you know, a few blocks from an interstate. So you have people coming day and night to this gas station. And here you have this person slumped behind a vehicle. You know, there's a lot of possible things that could go wrong. And the police know that. And the people at the gas station knew that. That's why the police were there. So it was a highly potentially dangerous situation. The police officer sees, and when a door is open, he sees a glass pipe, right, that he associates with crack cocaine. Yes, there were, they saw two pipes before the search. One was on the passenger seat. The other was in the driver's side door. Both of the pipes, in the officer's opinion, were the type of pipes that were used for crack cocaine. So those were facts that the police could consider in the totality of the circumstances in assessing whether a defendant was driving under the influence of drugs. When he did step out of the car, his speech was slurred. He gave, like, vague, confusing answers. They asked him, like, what's he doing there? And he said, well, I'm pumping gas or something to that effect. But the gas pump wasn't attached. And then he said something about 15 minutes, but it wasn't clear exactly what he meant by that. Had anyone seen him out of the vehicle before they noticed that he was slumped over? Is there any evidence of that? No, Your Honor, there's no evidence of that. The dispatch call was a person slumped over. It appeared that he, you know, drove in there. And before he could, you know, do anything else, he passed out. And that's, you know, a clear sign, a clue of impairment by drugs. You know, even if someone's tired, there can be two things going on at once. The defendant offered an explanation for why he was sleeping. He said as soon as he got out of the car, he starts talking about he had been working all day, he owns a business, and he had been visiting his mother. So he was exhausted and just snoozing. Yes. Do you think any difference that he provided an explanation is that are police officers bound to accept that explanation? Not at all, Your Honor. The case law is clear that, you know, the probable cause determination does not require that the officers rule out any innocent explanations for suspicious facts. This was clearly someone who was trying to hide any evidence of drug impairment. He, you know, when he was first asked if he had had any alcohol or drugs, he said no. Then subsequently he said, well, I had some marijuana, but then he added, oh, but it was yesterday. And then when he's asked about the pipes in the car, he says, you know, well, I have seven cars and, you know, other people may have been in the car. He's given all types of, like, explanations trying to explain why, oh, I was really tired, I was, you know. The police didn't have to accept all those explanations. They could use their common sense. Go ahead, I'm sorry. They could use their training. And remember, Officer Klinberg testified that in his own personal experience as a police officer, he had seen about 50 people under the influence of drugs. And in his personal life, he had seen about 50 people under the influence of drugs. So when you see all those people under the influence of drugs, you have a pretty good idea of how they act. Now, obviously, people are going to act differently, but they could use his own training and life experiences to look at Mr. Johnson and look at the answers he was giving, the way he was behaving, the explanations he was giving, and reasonably conclude that there was probable cause to believe that he was under the influence of drugs. Even beyond that, even before the field sobriety test, didn't the glass pipes that are associated with smoking crack cocaine give the officers probable cause to search the vehicle? You cite People v. Jones, and Jones, the state trooper, identified a one-hitter box that he associated with transporting drugs. Yes, I submit that would be the case. However, this court need not look at that in isolation. We're asking this court to look at the totality of the circumstances. But yes, in addition to that, there's much more here, too. And those were all taken into account by the police before they did arrest him. And the police acted properly here. They acted reasonable. They took their time. They wanted to figure out what are they dealing with here. They waited for backup to come. They even boxed in his car because they didn't know what he might do. It could slip in the gear. You don't know what you're dealing with when someone's slumped behind the wheel of a car with the engine running. And then they took their time. They listened to the defendant's explanations. They didn't accept them. They didn't have to accept them. They conducted field sobriety tests. He failed a number of them. And they looked at the pipes that were in the car, which they believed were used for crack cocaine. And they looked at the totality of the circumstances as the law requires them to do. And this is not proof beyond a reasonable doubt. It's not even a preponderance of the evidence. The only requirement, the standard requires that it's a probability of criminal activity. And here we are, middle of the night. The police had to make a decision. They said, do we let this guy go back into the car, drive on the streets of North Aurora? Who knows where he might be going? Maybe get on Interstate 88 a couple blocks away. Is this guy fit to drive? They concluded not only was he under the influence, but he was unsafe to drive a vehicle. And that's demonstrated by him being slumped over. You mentioned in your brief that the trial court should not have disregarded the results of the lack of convergence test. The defendant never objected to the admission. But the trial court is a gatekeeper. So the trial court does not have to hear a specific objection if he thinks there's no foundation, does he? Or should a trial court say, you haven't laid a foundation? In this case, the defendant never objected and had the defendant raise an objection. Then the state could have flushed it out. They could have discussed and then the trial court could have made a ruling. Defendant never asked for a prior hearing here. But, yes, the trial court is a gatekeeper of evidence. But there's a lot of evidence that can come in in a suppression hearing that isn't allowed in a trial. The rules are different. But I submit that in the event this court chooses not to give weight to the convergence test, there is still ample evidence of probable cause, even if you don't consider that evidence. All right. You will have an opportunity to respond after, Mr. Walker, if you choose to do so.  May it please the Court, Counsel. Good morning. Good morning. Good morning. Good morning, Your Honors. My name is Lucas Walker with the State Appellate Defender's Office. I represent Mr. Johnson in this appeal. Your Honors, we ask this Court to affirm the trial court's granting of the motion to suppress. It was not unreasonable nor against the manifest weight of the evidence for the Court to find that there was no probable cause for DUI drugs here. Mr. Walker, your client's behavior once he woke up was a little unusual. Would you admit that? I don't think so. I think he was tired and he acted reasonably. I think the trial court reasonably found that he gave off no indication of or certainly that there was no probable cause for DUI and drugs. He was cooperative. He was not slurring. He was not slurring. When he got out of the car, you can't hear what he was saying. He was slurring. Initially, he was slurring. I would disagree. I would disagree. I think the trial court's in a position to judge that. It can look at the video, and it's also in a position to compare his manner of speech on the video to his manner of speech during testimony. I think the Court's opinion on that should probably be deferred to. He wasn't slurring. Even Officer Klingberg kind of contradicted himself several times, actually, when he said he was slurring, but then he also acknowledged, well, his manner of speech was consistent throughout the stop, which by definition means not slurring. We would also point out that the presence of glass pipes, that does not give rise to probable cause for DUI drugs. Klingberg, again, contradicted himself. He said, oh, I thought that was for smoking crack, and then later on cross. Well, I actually know that's not contraband because I see those very pipes sold at every gas station across North Aurora. It's not contraband. It doesn't give rise to probable cause. Neither does the mere statement that there's cannabis in the vehicle, in the trunk. You can have cannabis in your vehicle. That's lawful. And if it is, it probably should be in the trunk, meaning it's inaccessible to the driver. So that does not give rise to probable cause. Doesn't it have to be properly packaged? It does. This issue was state forfeited by bringing it up for the first time in the motion to reconsider. Clear case of forfeiture.  Wasn't mentioned at all during the initial motion to suppress. Brings it up for the first time in the motion to reconsider, having never got into the elements required to get into that issue, which was what? Odor-proof, child-resistant, sealed or resealable, and inaccessible to the driver. I guess I'll leave that there, but our argument there is that that was forfeited. I want to go back to the issue about speech. You raise an interesting point that at the time of the hearing, the trial judge can view the video and listen to the defendant and say that's his speech, that's his pattern, his tempo, whatever of his speech. But isn't the issue what the officer saw at the time and at the scene to determine whether or not that speech appears to be slurred? And can't he consider that even if, for example, the defendant has an impediment? Well, the officer could consider it. Ultimately, it's the court to determine what the factual findings were and whether it rises to probable cause. So the officer can get up there and say, I think he's slurring. Of course, then he contradicted himself and said he has consistent speech. Right. This is a law question I'm asking you now. Yeah. It is what the officer observed at the scene, not the ability to compare it later. When the defendant testified. Now, maybe at a bench trial, it's a different story, but at a motionless trial. I guess I would argue that the court's in a position to reject the officer's opinion and believe he didn't really foresee that. So that's your argument, is that the trial court rejected the officer's opinion that the speech was slurred? Correct. And, you know, he did contradict himself several times. Right? He said, I saw residue. I don't even remember there's residue in the door handle pipe. And then, you know, when he's getting crossed, the state refreshes his recollection. He says, oh, I must have seen it when the door opened. Well, the court rejected that as well. So the court did make credibility determinations against Mr. or Officer Klingberg. We would also point out that he didn't appear confused. He was responsive to the officer's questions, the questions, and he asked questions of the officers. He rejected their request to search his vehicle. The court's finding that he was not confused or slurring his words or uncoordinated. It's not disputed by the video. That should be deferred to. When we look at the video, we look at the trial court's findings and determine whether or not the trial court's findings are against the manifesto or the evidence. In particular, with respect to your comments about the field sobriety test, I watched the video twice. The defendant did not perform as you just, you know, mentioned. He does not do well on the one-legged stand. It takes him several tries before he's able to get his foot off the ground and comply. When he's doing the heel-to-toe test, he steps several times to turn around. And before any of that, what about the exposure of his naked belly and his back and then he starts to pull his pants down, literally pulling to show his buttocks. And the officer says, you don't have to do that. Isn't that bizarre behavior? I think I would disagree that he pulled his pants down. I think he was just, he pulled, he's. . . You can watch the video yourself. I've watched it. He's pulling, he puts his hands up. He starts to pull his pants down. And the officer says, you don't have to do that. I would disagree that he was going to pull his pants down. As you acknowledge, maybe he started to, but I don't think he was going to. The officer kind of jumped the gun there, in my opinion. He was just trying to put the officers at ease while projecting a search of his person. He was trying to detract the officers from searching his car. That's a fair reference too, right? No, I think it was very obvious. That reaction when he started doing that by lifting his shirt and turning it around was in response to them saying, come on, let us pat you down. He said, no, I'll just show you. I don't have anything. So that's what it was in response to. It didn't have anything to do with the search of the car. They hadn't even asked yet for that. And so the field sobriety test, I watched the walk and turn. You can't see his feet the whole time. When you see them, they are heel to toe. Wasn't the trial court shifting the burden? Because it's the defendant's burden to show that there was no probable cause, not the state's burden to show there was probable cause. The defendant must show that there was no probable cause. The defendant must show that there was no warrant to get in his vehicle. At that point, the burden shifted. And the court found that. I'm talking about the probable cause for an arrest. Oh, I see. The probable cause to search. Well, the whole issue regarding the motion to suppress is whether or not there was probable cause. You mentioned that the glass pipes are for sale in gas stations. That's congress' testimony, yes. How does that have any impact on the court's or the officer's observation? He believes that one has residue on it, the one that's in the driver's side door, which is seen when the door is opened. That has residue on it, correct? I think the court determined that the residue wasn't discovered until after the arrest. And when the door opens, I did not observe any pipe. The pipe is supposed to be in the door handle, the one you have to put your hand in. This was the testimony. What about the fact that when the officers come upon him, he's got a large amount of cash in his hand, $200 in his hand. Is that? That's money from donation boxes that he collected that day. $200 isn't exactly high rolling money. I don't think that should really give him any clues as to whether he was intoxicated or not. And falling asleep in a vehicle, that's enough for someone to look into, no doubt about it. But that doesn't really provide much more to the probable cause analysis, especially once he gets out. He's cooperative. He's responsive to their questions, not slurring, and trying to demonstrate his compliance in asking them questions. Also, it might sound a little bit silly, but he did demonstrate some impressive physical control by tying his shoe. It might sound silly, but at the end of the day, he takes his shoe off, asks permission to do so, and I tie my laces. He said, yeah, go ahead. Takes it off, holds it between his knees, ties it well. He's looking at the officer conversing, puts it down on the floor or ground, puts his foot in there and secures it, and he's ready to go. That's another indicator the court could look to to cut against the finding of probable cause for DUI drugs. It certainly cuts against the finding of impairment. You argued earlier that State forfeited their argument about the defendant, his statement about cannabis in the trunk, unpackaged. Correct. You said that State forfeited because it was raised for the first time in a motion to reconsider. Page 2 of the defendant's or the State's reply brief, they mentioned that the State did discuss the cannabis in the trunk during argument on a motion. You're saying that they merely mentioned the cannabis? They talked about it. They said, well, while discussing drug paraphernalia, including glass pipe with residue in the door handle, the people further argued the defendant admitted that there was cannabis in the trunk of the car. Right. Page 77 to 81. It does nothing about packaging. Nothing about packaging. They merely mentioned that he said. And you're referencing the statement that's on the video. Are you saying this was not forfeited because he mentioned cannabis? Because he discussed that fact during the hearing on the motion. They discussed that fact that the defendants made that statement, and that statement is on the recording. I'm not going to dispute that they understood. So how has the State forfeited the argument when they actually made that reference and made the argument? They didn't make the argument. They didn't make any argument in relation to adult use or possession of cannabis in a vehicle. They used his statement that, oh, he said there's cannabis in the trunk, to use in conjunction with the presence of the glass pipes and referencing shrimps and saying, see, now just like shrimps, where he saw glass pipes and there was a vial of white powder, well, he had glass pipes and he said there's cannabis in the trunk. They never got into, by the way, it wasn't packaged properly. You know, it wasn't odor-resistant, it wasn't child- He said it was unpackaged. That's in his statement. No, he said he took it out of the dispensary bag. That's unpackaged. No, it absolutely does not indicate it's completely unpackaged. And also, there's no way. The State did not raise the cannabis packaging issue during the initial motion to suppress hearing. The statement that he, obviously, all the evidence is there. That's not the issue. We're not arguing that they tried to insert new evidence. The issue is an alternative legal basis argued for the first time in a motion to reconsider. And none of those elements were discussed during the initial motion to suppress hearing. And the court did not use its discretion in finding it was forfeited. So I guess at the end of the day, the field sobriety test, we would argue, you know, at the most minimal infractions, I would say the walk and turn. He did touch heel to toe when I saw it. He did take small steps, I believe, as instructed when he turned around. He held his hands at his sides and he counted out loud. And to the extent he broke stance, he wasn't told not to. And we've got to be clear here. He wasn't, like, wobbling and crazy. He kind of bent his knees to get ready to perform. The one leg stand, look, it does appear he touched his foot a few times at the beginning of the test. But then he got his balance and held tight until 25 seconds when the officer told him to stop. Frankly, it looked like he could go longer. The court was not unreasonable in finding that those amounted to minimal infractions, especially when you look at the surrounding evidence where he's compliant, cooperative, not unstable. We would point out to, like, the day of Ryan in Moscow cases, there could be infractions, there could be glassy bloodshot eyes, admissions to take in an intoxicant. But if other indicators of impairment are not present, that doesn't compel this court to reverse. What are those four indicators? Problems driving, not here. Stumbling, not here. Falling, not here. Inability to communicate, not here. So nothing here compels this court to reverse. And this court should affirm. As far as the convergence test, the court was not incorrect or abused its discretion in any way in rejecting that. Kavanaugh did the same thing. The fact that there's a defense objection in Kavanaugh and not here really shouldn't persuade this court. The trial court can accept or reject evidence all on its own. It was the same reason, a lack of foundation, no scientific basis. So that should be upheld. And even if it did come in, I think the probative value there was nil at the end of the day. Klingberg, again, testified. He didn't even know if it applied to defendant. There's some people it doesn't. And the video shows the defendant prior to the HGN indicating he has film. I don't know what it is. It sounds like film or cataract or something like that in his right eye. So the probative value there is probably not much. We've covered the forfeiture. I guess at that point, Your Honors, unless there's more questions, I would just ask this court to affirm the trial court's order. It's not against the manifest weight of the evidence, nor is it unreasonable. Are there any more questions? It's actually nine minutes into the video before the knock on the window, right? I hesitate to say that specific of a number, but I take it. When I looked at it, it was nine minutes. And would you agree that the gas station speakers were blaring pretty loudly? They didn't sound very loud to me. They didn't jump out to me. I read their testimony. When the officer says afterwards, I ask them to turn it down. Oh, sure. And then it goes down. I don't want to dispute the fact that the officer has perceived it as loud. I don't know exactly whether or not it was the gas station attendant who called the police, but it probably was, right? Yeah, I don't know. I don't think that was disclosed, but I'm not sure. No, the gas station was open. No, no, no. I didn't think it was disclosed who called. I don't know. Right, right. Thank you. Thank you, Your Honors. Mr. Keller? In response to counsel's argument that the issue of the defendant's admission to having unbanked cannabis was forfeited, the people did argue at the motion to suppress hearing that defendant admitted there was cannabis in the trunk, and Officer Kloonberg testified about that, and it's right on the video. And he not only admits that he had been to the dispensary, he admits that he had taken the cannabis out of the bag. He specifically says it's not bagged up. So you have a violation of the vehicle code there, Section 11502.15B, which explicitly places a requirement on how cannabis can be transported. It says no driver may possess cannabis within any area of any motor vehicle upon a highway except in a sealed, odor-proof, child-resistant cannabis container. So defendant's own admission is admitting that he violated the vehicle code as to how cannabis can be legally transported. He was at the dispensary. He took it out of the bag. Now, we know that he couldn't have taken it out of the bag at the Thornton's gas station because he was passed out. So it's reasonable to infer that he, sometime prior to driving to the gas station, he had been to the dispensary, had taken the cannabis out of the bag. Make a reasonable inference that he would take cannabis out of the bag because he wanted to use some. Was there any odor of the substance identified by the officer? I don't recall that being one of the issues. Your Honor, the officer didn't testify to observing any odor, but we have numerous other clues of impairment in addition to him being slumped over, can't even turn off the engine before passing out. As Justice Burkett referenced, his odd behavior when he stepped out of the car, you know, partially undressing. His slurred speech, his, you know, strange answers to the officer's questions, his attempts to try to, you know, justify his behavior, try to explain things away. All those were clues of impairment. His, you know, failure to complete the field sobriety tests properly, at least certain ones. He did give a pretty good explanation for why he was passed out, though. He had been working all day. Two things can be true at once. Sure, he could have been tired, but he also could have been very impaired by the use of drugs, and the officers had ample evidence to conclude that that's what was going on there. He also said he had a methadone shot earlier in the day. Yes, that's correct, too. And that was another clue that this is someone who has a history of drug use. Now, counsel points out, well, he was able to tie his shoe, and, you know, that's fine. He did kind of have two feet on the ground and slip the shoe on, but the law doesn't require that a defendant be, you know, constantly falling down at all times. Well, counsel is just explaining that that maneuver is consistent with somebody who's sober and not impaired. That's all he's offering it for. That's an indication that maybe the defendant wasn't under the influence of drugs. That's why we have a totality of circumstance test, because officers look at everything. Is it, you know, some people under the influence can still perform certain functions, they can give some answers, but that doesn't mean they're fit to drive a vehicle in a safe manner. What about the fact that their request, you know, the arrest of the defendant does not come until after he denies or says he's not giving consent to search? Did that show some hesitation on the part of the officers, that they did not immediately arrest him after the field sobriety test? Your Honor, the officers were trying to gather as much information as possible about defendant and the circumstances of him being at the gas station, passed out. And when you look at the sequence of events, the police acquired probable cause to arrest for driving under the influence of drugs well before they even questioned him about that. But they also acquired probable cause to search the car after defendant made his admissions to having unbagged cannabis. I want to ask you about that, actually. It's your position that at the motion to suppress, not the motion to reconsider, that the State argued that the cannabis was not properly sealed and packaged, or that simply there was cannabis in the car. Which or both did you argue? Your Honor, suppression here in the State argued about defendant's admission to having cannabis. Cannabis in the car, period? Yes. But not how it was packaged, correct? That's correct. Now at the motion to... That's all I needed. At the motion to reconsider, I just wanted to clarify that point. Right. I would just add, if I could, at the motion to reconsider, the State did not present any new evidence. They were simply relying on the evidence that was at the suppression hearing, which was Officer Klingberg's testimony and the video. So they simply elaborated on that defendant's admission. It was a completely new theory, correct? It was a theory that this was all evidence that was brought out at this suppression hearing. New theory? Or you had argued it before? Which is it? He admitted that there was cannabis in the car, so it wasn't a new theory, but it was more elaborated on at the motion to reconsider. So the State did present additional arguments that weren't made at the suppression hearing. So because of that, I would argue that it wasn't forfeited because all the evidence that was necessary. And the Supreme Court in Davenport, Davenport, I'm sorry, U.S. Supreme Court states that the officer's state of mind is irrelevant as far as what they ultimately charged him with. Here, the officers thought that they had ample probable cause, and it's borne out by the evidence, to arrest the defendant for driving under the influence of drugs. And Davenport says, even-handed law enforcement is best achieved by the application of objective standards of conduct rather than standards that depend upon the subjective state of mind of the officer. So here, if you look at the video, and even Officer Klingberg's testimony, objectively, it supports a finding of probable cause not only for defendant driving under the influence of drugs, but also violating the Illinois Vehicle Code as to how he was transporting unbagged cannabis. So I assume our time is up for all these reasons. The people believe that the trial court's ruling was against the manifest weight of the evidence, and people ask this honorable court to reverse the trial court's judgment. Thank you. Thank you very much. We will take these arguments under advisement. We will issue a decision in due course, and we will stand in recess to prepare for our next case. Thank you very much.